Our final case of the morning is Linderman v. U.S. Bank Mr. McCrossin May it please the Court, Your Honor. There's two issues that we're here to consider today. And the two issues are the following. Was the 9-5-15 letter from Linderman to the bank a qualified written request under the RESPA statute? I'll refer to a qualified written request as a QWR. And two, did Linderman create a question of fact regarding whether a. Linderman had damages which occurred after the bank's failure to respond to this QWR, and b. whether those damages were approximately related to the bank's submission. Regarding the first issue, was the 9-5-15 letter a QWR? We contend that it was a valid QWR under the Catlin case. Could you use real words instead of weird abbreviations? Absolutely. You may have heard me ask others before you, and so I'm now asking you. Yes, Your Honor. We are not specialists. We're generalists. I appreciate that. Thank you, Your Honor. We contend that the qualified written request, the letter that Ms. Linderman sent to the bank on September 9, 2015, qualifies as a qualified written request under the RESPA statute. And we say that because under the definition of the Catlin case, we believe that it qualifies. Catlin says that to the extent a borrower is able to provide reasons for a belief the account is an error, in that letter that they sent, the 9-5-15 letter, the borrower should, but that the request for information that the borrower makes to the bank must simply be in sufficient detail enough for the bank to respond for it to be a qualified written request. Your Honors, we contend that we fit squarely within that definition for two reasons. The request, or the letter, requested an accounting of all accounts, including all payments and deposits there to or there from, from the principal, interest, tax, and escrow accounts. And we also contend that this letter, this 9-5-15 letter, is a qualified written request under RESPA. Because it really is under what? I'm sorry? More acronyms. Why don't you just say the Act instead of RESPA? Okay. It's possible to generalize my request and not limit it to one acronym at a time. I note my deficiency. Okay. And if I could just clarify, the district judge kept referring to the September 9th letter. That's got to be a typo, right? Because we're talking about the September 5th handwritten letter. Yes, that's the letter I'm referring to, and I believe it is a typo, Your Honor. Okay. We believe under the Real Estate Settlement Procedure Act. Just call it the Act. The Act. It's real simple. Yes. The Act, that the September letter falls within the definition of servicing, as servicing is defined by 12 U.S.C. 2605 I.3. Right. I mean, she specifically uses that word throughout and makes a number of very specific requests for documents, all of which fall within the requirements of the statute to constitute a qualified written request requiring some action. I think the pressure point in this case is really on the causation. Sure. So maybe skip right to that. Absolutely, Your Honor. Okay. There's two issues regarding causation in this case. A, whether Linderman had damages that accrued after she had sent the letter, and two, whether these damages were approximately related to the bank's failure to respond to the letter. We contend that a question of fact was created as to whether the damages accrued after the bank's failure to respond, by arguing essentially two categories of damages, emotional pain and suffering. It's derived from stress. There was prescription medication and therapy that she received in relation to that. We'll rest on the brief and not belabor the facts there. You can find the facts fleshed out from pages 15 to 17 of Appellate's brief, but you'll note a consistent element to all of those facts, that they're due to her being in a limbo state, to not knowing her future with respect to these issues, and to not knowing how to take the next steps. With respect to the second category, these are the real damages. We are contending that, you know, essentially there was a continued result, or there was a continued deterioration of real property damages. There was continued fines, code violations, and an inability to reside, and potentially outstanding monies owed from the bank to the mortgagor. Again, this is in Appellate's brief 17 to 18. The consistent trend here, Your Honors, is that it was generally derived from an inability to secure the home. We think this meets the Catlin standards of proving that after the bank didn't respond, there were damages that continued to happen. The real crux of this case speaks to proximity and proximate cause, and whether these damages were proximately related to the bank's failure to respond to the QWR. We contend that they were. Appellant provided testimony and affidavit evidence to create questions of fact regarding proximate cause, as required by Deirdrich.  But I'll call out one particular quote of Linderman's affidavit that I think really speaks to proximate cause. In paragraph 23 of her affidavit, she states that if the bank had addressed the QWR, then I would have been able to get funds to make repairs to the home, or I would have been able to be in receipt of an explanation and able to plan my next steps. We contend that the question of fact is created with respect to proximate cause regarding whether if the bank responded to her ability to get funds. We believe that creates a question of fact, because if they showed her how to get the funds, or it's proximately related to the damages, if they showed her how to get the funds, she would have been able to alleviate the real property damages, as they were all derived from her inability to secure a repair of the home. All of that predated the September 5th letter, though. All of the vandalism, the inability to secure the home, the inability to make payments and know what was going on with her mortgage, and the fact that her relatives weren't making the payment after she vacated the home, and the breakdown of the marriage and the diagnosis of bipolar disorder and depression and anxiety, all of that predated September 5th, 2015. Right. That's a very fair and accurate point, Your Honor. However, although some of those damages predated the bank's failure to respond, some of the damages continued to occur after the bank didn't respond. Well, that doesn't establish a causal link. Right. She's just still got problems that are ongoing, but the bank can't be held responsible for that unless you can establish a causal link to the failure to provide an adequate response. And as we know, there was a response that begs the question about whether it was adequate or not. Right. But in the present posture, we do need a causal link.  I'll give you a for instance. If the bank had responded to the QWR and provided to her how to receive potential monies owed in the escrow account from the insurance company, she could have secured funds to secure the home and stop the elapse of potentially mold damage to the home. That would be one example. And the statute imposes that substantive requirement on the bank in response to a qualified written request for information? It's just an informational request. It's not a substantive duty statute. So it's not a duty beyond the requirement. To provide information. To provide information. About the status of the loan, what's gone out, what's gone in. What's going out, what's going in, which includes the actual escrow account, which would have included the insurance proceeds. Right. But not instructions or a substantive duty to provide other explanations, to provide other funds, etc. It's just a tell us what's the status of the loan. That's all the bank needs to do. So what causal link is there between her ongoing emotional distress? So emotional distress, yes. And the issue of the current status of the loan, what's gone in, what's gone out. Right. So, Your Honor, Ms. Linderman Not how to obtain other funds, that's not part of the duty. That's fine. With respect to emotional distress, had the bank provided to her an accounting of the loan so that she could understand what was in her account, what was. Specifically, she was interested in the escrow account. What was there and what was not. She was not informed of that. She would have understood whether she had the ability to take next steps with the bank or not. But she was left in a state of limbo. That did cause her emotional pain and suffering through anxiety, which she did receive medical treatment for. Your Honor, Your Honor, my time is up. Thank you, Mr. McCrossin. Thank you. Ms. Porter. May it please the Court. You've already asked that we just kind of cut to the damages, and I don't want to belabor that point, but that's what I will address first. It's undisputed among the parties that there was a letter dated September 5th. I believe it was, I think the record reflects that it was mailed, maybe that it was mailed on September 9th, and maybe that's where that September 9th date comes from. Okay, thank you. But that Ms. Linderman sent the bank a letter dated September 5th, 2015, and to the extent that the bank would have been required to respond or act if it was, in fact, a qualified written request, that duty would have arose about October 5th, October 9th, 2015. As you've already noted, the record is full of backstory and history of Ms. Linderman and very unfortunate things that occurred to her, occurred to her family, and occurred at the home. These things date back all the way to 2013, after she had purchased the home, a conflict with the family, she's forced to move out of the home. The home is vacant. The home is vandalized in 2014, I believe two or three times. 2015, it's vandalized again early 2015. During the summer of 2015, there's a storm, knocks a tree down on the roof. Now you have damage to the roof. The home is now exposed to the elements. You have things that are happening within the family that's all within the record. And again, like I said, some very unfortunate things. But all of these things predate October 5th and, again, September 5th, 2015, the date of the letter. The medical issues, the treatment for anxiety, bipolar attached to her affidavit. Ms. Linderman included a note from a doctor. There's also a list of prescription medications that she's taking as well as a list of illnesses and sicknesses. Of that list of illnesses and sicknesses, there's about 30. The majority of them list onset dates that are prior to September 5th, 2015. There are five, I believe, that don't have an onset date at all. To the extent that there are ones that do post-date the September, October 2015 time period, those show up around April, I believe, of 2016. As a result, as the lower court determined, there was no evidence to raise a genuine issue of the proximate cause of the borrower's damages as they relate to a claim under the Act. The other issue that Ms. Linderman raised on appeal was whether that September 5th letter was, in fact, the qualified written request. The bank contends that it wasn't. Under the statute, a qualified written request, or a QWR, I know we just talked about acronyms and things like that. Request. The request. Under the Act, in the request, a borrower is allowed to send a letter to the lender and ask about the servicing of their loans. Under the statute, 2605I3, there's a definition for servicing. In the definition of servicing, it limits the servicing to amounts paid by the borrower to the lender. The last time that a payment was made on Ms. Linderman's loan with the bank was September 2013. It was approximately two years before the date of the request. As such, the bank contends that this wasn't a request under the terms of the statute. If there are no questions. It looks like there are none. Thank you. Thank you very much. Case is taken under advisement and the court will be in recess.